Lattghlin, J.:
The plaintiff and the defendants are voluntary unincorporated associations. The action is brought to restrain a.strike by the members of the Hew York Printing Pressmen’s Union Ho. 51, Franklin Association Ho, 23, and the Job Press Feeders’ Union Ho. *337 1, which are subordinate unions of the defendant the International Printing Pressmen and Assistants’ Union of North America, which for brevity will be referred to as the International Union.
' The jurisdiction of a court of equity to enjoin a labor organization or its members from declaring a strike in violation of a contract and the propriety of exercising such jurisdiction, are not fairly presented by the record and, therefore, we refrain from expressing an opinion thereon. The plaintiff is not an employer of men. It is an association of local branch associations, called “ Local Typothetse” which do not employ men; but their members are master printers who employ pressmen. It has a local branch association in the city of New York, known as “The Typothetse of the City of New York,” which has upwards of fifty members engaged in the printing business in said city. ■ It appears that a strike is threatened by the defendants the local unions, against some of the members of the plaintiff’s local branch association in New York. The theory upon which the action is brought is not that the plaintiff will sustain any irreparable damage,, but that the members of its local branch association against whom the strike is threatened will sustain such damages, and the action is brought in their .behalf. The objects of the plaintiff, so far as material to the question presented, as shown by its constitution, are “ the mutual protection of its members against illegal or unjust interference with the enjoyments of their rights as citizens in the. conduct of their business. The securing of mutual advice, cc-operation and assistance in all matters affect-, ing trade conditions, either local or general. To secure and preserve equitable conditions in the workshops of our members, whereby the interests of both employer and employee shall be prop-, erly protected. The investigation and adjustment of any question arising between members and their employees which may be referred to and come within the jurisdiction of the association. The exchange of information and the cultivation of a community of interests and a fraternal spirit amongst its membership.” With respect to the powers of the plaintiff, its constitution provides as follows: “ It shall liáve power to legislate for its membership and determine all questions arising between' them or it and the trades unions or other employees, in regard to shop practice,. hours of *338 labor, apprentices, and every other question except wages, which being governed by local conditions shall be regulated by the local . organizations. It shall have power-, to levy assessments for the Emergency Fund and make laws for its disbursement in the protection of its members, and shall be empowered to -enforce, its laws by fines imposed upon. its members' and by the withdrawal of their charters upon failure to comply with its laws as they may be from time to time enacted.-
“hTo general law shall be enacted except at a regular, annual convention, or at a special convention regularly called for the purpose, and by a vote of three-fourths of the delegates present, as provided in Article III, Section 2, the same having been reported upon favorably by the Executive Committee.”
These provisions doubtless authorized the plaintiff to legislate on the subjects specified for- its subordinate branches with respect to the conditions <upon which their members shall employ men, excepting as to the rate .of wages which is expressly excluded from its jurisdiction ; but it is doubtful whether they authorized the plaintiff to make contracts in behalf of the members of the local associations which would be binding upon the members thereof to employ any pressmen, and it is not clear that it is authorized to maintain an action for the benefit of the members of its local branch associations.,
The plaintiff association, howéver, assumed jurisdiction to. make a contract in behalf of its local associations and the members thereof, Avitli the defendant - the International Union, regulating, among other things, the hours of labor, shop practices and the adjustment of controversies for a period of five years,.expiring on the 1st day of Hay, 1907.. The members of the local associations of the plaintiff apparently observed the conditions of this contract in employing pressmen during that period ; but it does nót appear that formal contracts Avere made either between the local branch associations of the plaintiff or the members thereof and the local unions of the defendant the International "Union. On the 8th day of January, 1907, an agreement, purporting to be between the plaintiff and the. defendant the International Union,.was signed by five individuals who constituted a committee of the plaintiff association, authorized to meet with a committee .consisting of the directors of the defendant the International Union with a view to negotiating a renewal of *339 the contract then in force, and by four of the five members of the committee of the International Union. Immediately above the signatures the agreement contains a clause as follows: “ Subject to ratification by the U. T. A. Convention.” The signatures of the members of the committee purporting • to represent the plaintifE appear first, and this clause had reference to the. plaintiff, but it precedes all signatures. The defendant the International Union holds a convention annually in the month of June, and the plaintiff holds a convention annually in the month of September. It appears by the affidavit of the president, of the plaintiff’s local branch association in Hew York that the ratification of this contract by the plaintiff “ was afterwards duly given by special conference held in the city of Pittsburg, Pa., on February 2nd, 1907,” but it does not appear that the ratification was by a convention of the plaintiff. Before the next convention of the plaintiff, after the agreement was signed, the defendant tlieTnternational Union held its convention in June, 1907, and took action with respect to the contract, to which reference will be made presently. The agreement of January 8, 1907, purports to be an agreement between the parties, to take effect on the 1st day of Hay, 1907, and to continue in force five years thereafter. Its provisions are, with one exception, the same in substance as those of the prior agreement for five years. The material difference-is that under the former agreement it was provided that fifty-four hours should constitute a week’s work, and under this new agreement it is provided that fifty-four hours shall constitute a week’s work from Hay 1, 1907, until January 1, 1909, but that thereafter forty-eight hours should constitute a week’s work. The change, in that regard was from a nine-hour day to an eight-hour day, but it contains no provision that the pressmen should be paid the same wages for eight hours as. they theretofore received for nine. The question of securing for pressmen a change to an eight-. hour day at the same wages as for nine had received serious consideration at the convention of 'the International Union held in the month of June, 1906, preceding'the expiration of the first five-year contract. At that convention the outgoing board of directors reported that at the last preceding convention the question of a shorter workday had been delegated to them, and that “ they beg leave to report to the Convention the following plan whereby some *340 tangible method or course may be arrived at that will result in the adoption of the eight-hour day by the I. P. P. and A. IT. r
“ 1. That this Convention instruct the incoming Board of Directors to meet as a committee with a like committee on the part of the United Typothetse of America, as explained in the letter to Mr. MacIntyre under date of April 28th, herein mentioned, the committee on our part to strive with all power possible to have some concessions made by the Typothetse towards having the eight-hour day established within reasonable time, in a manner that will warrant its adoption on mutual grounds as a finality, and an agreement with that intent be entered into; the Committee on our part having power to sign up such an agreement, if the eight-hour day can be brought within a reasonable time of attainment, if not, the Committee to report back to our next Convention, as provided in Section 6 of this report. * * * ■ ,
“ 5. The question of what year and date the eight-hour day shall be adopted shall remain within the keeping of the incoming Board of Directors, they to report to the next Convention in full their observations and judgments as to what our future course should be in setting a date for the adoption of the eight-hour day.
“ 6. In. view of the fact that our agreement with the United Typ'othetse of America will not expire until May 1, 1907, the Board of Directors feel that the provisions of Section 4 of this'report would be the wisest course to follow, until at least another Convention had followed the carrying out of the first three sections of this report, in order that an opportunity may be given the membership to understand our financial strength, as well as hearing from the incoming Board of Directors a report of the work done by them during the year towards an amicable adjustment of the shorter workday, or eight-hour day, with the United Typothetse of America. * * *
“ 11. The foregoing report is made in outline of what should be done by the membership towards acquiring the eight-hour day, and while we all would like to see it come as soon as possible,- we should not attempt to enforce it with -a strike until all other means had failed to secure it, and our finances and organization are made such that, in the event of failure to accomplish our desire along the lines of easy approach, w@ pap leayg phe date of enforcing it within - the *341 keeping of those whom we elect to administer our affairs, and then when they inform us of what course we should pursue, we will, know that the time has been carefully considered and our duty and finances will have to aid ns in doing the rest.”
The omitted parts of the report contained a recommendation with respect to assessments for the purpose of raising a fund to be known as the “ Shorter Work Day Fund ” and recommended that efforts be made to place not only their own members, but members of “ the entire printing industry ” upon the eight-hour day basis, the same as had been accomplished with the nine-hour day in 1898. This report was referred to the committee on' officers’ reports and the report of that, committee thereon was adopted, which so far as material, was as follows:
“ We, the Committee, recommend that the Board of Directors be instructed to meet with like committee on the part of the U. T. A., with instructions to secure a renewal of the agreement, with a declaration as to whether the eight-hour day will be agreed to. * * *
“ The Committee are pleased to coincide with the recommenda- . tions of the Board of Directors, inasmuch as they are of such a nature that the Committee have seen fit to indorse the plan of assessment as formulated by the-Board, to wit: * * *
“ 2. That an assessment of 50 cents per month be levied upon all ■ pressmen members monthly from July 1, 1906, until July 1, 1907. •
“ 3. That an assessment of 25 cents per month be levied upon all feeder or assistant members monthly during the same period.
“ 4r. That this fund be sent to the International Secretary-Treasurer monthly by the Secretary of each local union, the same to be deposited in a different bank from that in which we deposit our regular funds, and the same to be known as the 6 Shorter Work Day Fund.’
“ And that we recommend that this Convention declare in favor of the eight-hour day immediately after the expiration of the agreement now existing between the U. T. A. and the I. F. P. & A. U., provided it is not within the scope of the' possibilities of having same arranged amicably and equitably between the U. T. A. and the I. P. P. & A. U. within a reasonable time after the expiration *342 of the agreement now existing between these two respective organizations.
The Committee further recommend that steps be taken by the Board of Directors to act in conjunction with the other branches of the printing crafts for perfecting 'a plan whereby unity of action may be carried out in the. adoption of the eight-hour day.”
The board'of directors of the International Union consists of live ■ members who are its officers, namely, the president,, three . vice-presidents and the secretary and treasurer. The agreement of January 8, 1907, was negotiated and signed in behalf of the defendant the International Union by four of these directors, - The fifth refused to sign. It appears by affidavit that at the convention of the International Union held in June, 1907, four resolutions, preceded by a preamble, and apparently presented by some officer, committee or delegate were adopted, as follows : .
“ To the Officers and Members of the I. P. P. & A. U., Whereas, Our Board of Directors has renewed the agreement with the United Typothet.03 of America, now, therefore, be it
“ Resolved, That said agreement is hereby ratified and approved provided the ‘ open shop’ clause is stricken out and an amendment is inserted providing- for nine hours’ pay for the eight-hour day.
“_And be it further Resolved, That in the event the U. T. A. rejects these amendments our Board of-Directors are instructed to submit the question of the immediate inauguration- of the eight-hour day to the referendum, said" referendum to be taken thirty days áfter such rejection.
“ Resolved, That a Shorter Workda}1' assessment of ten per cent be levied upon the membership of the I. P. P. & A. U. membership ; the money to be collected to be put in the Shorter Workday fund; and be it further . -
“jResolved, That the foregoing resolution be submitted to the referendum as part of and incorporated in Proposition Uo. 18, which provides for the immediate inauguration of the eight-hour day, provided certain amendments to an agreement are rejected by the U. T. A. ” - '
The board of directors of the International Union attended the convention of the plaintiff in September, 1907, with a view to having the agreemént of January 8, 1907, amended in accordance with *343 the action of the convention of the International Union, but were unsuccessful, and no further understanding on these subjects was reached between the • interested parties. The three' local unions which are defendants endeavored to obtain like concessions from the employers of their members, and being unsuccessful, have ^ threatened to call a strike of their members. It is not claimed that' either of the defendants, the Hew York Printing Pressman’s Union Ho. 51, or the Job Press Feeders’ Union Ho. 1, has in any manner ratified the agreement of January 8,1907, but'it is claimed that the defendant the Franklin Association Ho. 23 has ratified it. The plaintiff, for such ratification, relies upon two contracts purporting to be made between its local branch' association in Hew York and the Franklin Association, one under date of March 4, 1907, and the other under date of April 19, 1907. The agreement of March fourth ivas not signed by any officer or member of the Franklin Association, or by its authority, and was never ratified by it. It appeared that the Franklin Association had been negotiating an agreement with the Typothetse of the city of HewYork, but that they were unable to come ^o an understanding, and two of the officers of the International Union, not only without, so far as appears, authority of the Franklin Association, but without authority from the International Union, signed this agreement of March fourth with the officers of the TypothetaB of the city of Hew York. The agreement of April nineteenth was signed by the president of the TypothetaB of the city of Hew York for his organization, and by .
“ Thos. J, Moran—Franklin Ho. 23.
“ John P. Mines—■ “ .”
It appears that Moran was the business agent and Mines was president of the Franklin Association, .but it does not appear that they were authorized to sign the agreement for the association. It is shown by'the affidavit of Moran that he signed on the representation that it was an agreement to have the differences between the , two associations arbitrated by the officers of their respective international associations, and that he and Mines were ex-officio members of a committee of seven, duly appointed by the Franklin Associa- , tion on the 24th day of February, 19.07, to negotiate a contract with the TypothetaB of the city of Hew York that neither he nor Mines had any further or other authority from the association ; that they *344 did not consult the other members of the committee and were not authorized to act for them, and that neither their action in signing this contract nor the action of the officers of the International Union in signing the contract of March fourth was reported to or ratified 'by the Franklin Association. The agreement of January 8, 1907, does not purport to. obligate the members of any subordinate union of the International Union to work for members of the plaintiff’s local branch associations, nor does it obligate the latter to employ the former. It merely prescribed the terms and conditions under which men when employed should work. The plaintiff, therefore, shows no basis for its action unless it be that part of the agreement of January 8, 1907, which purports to obligate the International Union from declaring a strike during the continuance of the contract unless for a violation of the contract, and purports to obligate the members of plaintiff’s subordinate local branches not to engage in any lockout excepting in case of a breach of the contract .by a local union of the International Union or its members. Under the constitution of the International Union and the constitution and by-laws of its local unions a strike probably could not be successfully inaugurated if its officers were Enjoined from authorizing it, because a strike may not be called by a local union without the approval of the majority of the officers of the International'Union,'and should it be called without such approval the members thus striking would not be entitled to receive the allowance of seven dollars per week for married men and five dollars for single men, to which they are entitled from the treasury of the International Union for a period of eight weeks, provided the strike is regularly called and duly authorized, which allowance may be continued longer in certain contingencies. • Aside from the question as to whether four of the five directors, acting as a special committee, could bind the International Union to a contract which the five might have made, there is grave doubt as to whether it was competent for the committee to bind the International Union by this contract which postponed the going into, effect of the eight-hour day for a period of twenty months after the expiration, of the contract linder which the parties were then acting, and even then did not secure the same wages for the eight-hour day as for the nine. There is much force in the argument that the authority of the com *345 mittee was to make a tentative agreement unless the plaintiff yielded to the eight-hour demand and to report their action, as was apparently done, to the next convention. There are some things in the action of the convention of 1906 indicating that this was the intention, and the action of the convention in 1907 only constituted a ratification of the agreement if amended in two particulars. The eight-hour clause in the agreement of January 8, 1907, was of no practical value, for it.did not secure the right to t’.ie pressmen to pay as for a previous nine-hour day, and this is emphasized by the refusal of the convention off the plaintiff in 1907 to accept the amendment proposed in that regard. It is quite dear that the authority conferred by the convention of the International Union in 1906 upon the committee to negotiate a renewal of the contract was to secure to the pressmen an eight-hour day without reduction in wages within a reasonable time.
It follows, therefore, that, the motion for the injunction was properly denied.
The order appealed from should be affirmed, with ten dollars costs and disbursements.
Patterson, P. J., McLaughlin, Clarke and Scott, JJ., concurred.
Order affirmed, with ten dollars costs and disbursements.